NEGRO JOHN, AND OTHERS *vs.* WILLIAM MORTON, *Adm'r of* JAMES CLAGETT.—*December,* 1836.

Upon a petition for freedom, the petitioners to establish their right thereto, offered to prove, the due execution of a paper, purporting to be the last will and testament of their former owner, by which they claim to be manumitted. But it appearing that the same paper had been exhibited in the Orphans court for probate, and probate refused, upon a caveat being filed thereto by the next of kin, the county court rejected the evidence as inadmissible, and this court, upon appeal, affirmed the judgment.

A will of personal estate, which the Orphans court has refused to admit to probate, cannot afterwards be proved in the county court,

APPEAL from *Montgomery* county court.

This was a petition for freedom by the appellants, filed on the 1st of December, 1835, against the appellee, and was submitted to the county court on the following statement of facts.

In this case, it is agreed, that *James Clagett,* of *Montgomery* county, in the state of *Maryland,* against whose administrator this petition is filed, died in the said county, some time in the year 1834. That he left a paper writing, signed by him, in the shape and form of a testament and last will. That the said paper writing was filed in the Orphans court of the said county, shortly after the death of the said *Clagett,* and there propounded for probate. That the next of kin of the said *Clagett,* filed a *caveat* in said Orphans court, against the said paper writing being admitted to probate, as the last will and testament of the said *Clagett,* alleging that the said *James Clagett* was, at the time the said paper writing was executed by him, of an unsound mind, and incapable of making a reasonable disposition of his estate. That the said Orphans court having appointed a day for that purpose, heard testimony, and the argument of counsel, in support of, and against the validity of the said will, on the allegations in the said *caveat* contained, and after consideration decreed, that the said *James Clagett* was of unsound mind, and incapable of making a reasonable disposition of his estate, by last will and testament, at the date of the said paper writing,

and refused to admit the same to probate. That the said judgment of the said Orphans court remains unreversed, and unappealed from, and of full force in the said court. That the said *James Clagett*, in and by the said paper writing, purporting to be his last will and testament, disposed of his estate, real and personal, and among other clauses was the following, to wit: " I give full power to my executors, and I direct them immediately after my decease, to manumit and release from slavery my two negro men, *Robert* and *Aaron*, to whom I hereby give the use and quiet possession, rent free, of my tenement and garden in *Georgetown*, late in the possession and occupancy of *Mrs. Rabbitt*, to hold and continue such use and possession for their joint lives, and the life of the survivor of them."

" I direct my executors, immediately after my decease, to manumit and release from slavery, after well-clothing them, my four negro women, *Mary*, *Phœbe*, *Sophia*, and *Elizabeth*, and all their increase, which increase shall be so specially manumitted as to belong to their mothers, the boys to the age of twenty-one years, and being girls to the age of sixteen years; and I declare, that all the said negroes may remain on my farm, and be supported out of my estate, they working thereon as usual, until the said farm shall be sold, and I direct my executors, when the said negroes shall depart from my farm in consequence of its being sold, to give and deliver unto *Mary* and *Phœbe*, in consideration of their numerous offspring, three barrels of corn, and one hundred pounds of meat, or a milch cow a-piece, at their option."

" I direct my executors, after making sale of my farm, whereon I reside, and after conveying and giving possession thereof to the purchaser thereof, without any delay, to manumit and release from slavery, (after well-clothing them,) all and every of my other slaves, except only my negro man, named *Harry*, a shoemaker, now in the service of *Jesse Leach*, which said *Harry* is to be taken as a part of the residue of my estate. My will and desire is, and I do hereby will and direct, that my male slaves shall be manumitted and dis-

charged from slavery upon this condition, that they make comfortable and ample provision for old *Phœbe* during her life."

It is understood and agreed, that nothing herein contained shall be taken to be an admission on the part of the defendant, that the said paper writing was executed by the said *James Clagett*, as his last will and testament, but only that such paper writing was exhibited for probate as aforesaid, and the same being now presented to this court by the petitioners, who offer to prove the execution thereof by witnesses before this court, the defendant objects to the admissibility of the same as evidence in this cause.

1. Because the said writing never has been admitted to probate in any court having jurisdiction of the probate of wills.

2. Because the judgment of the Orphans court of *Montgomery* county aforesaid, in the said *caveat*, refusing to admit the said writing to probate, is conclusive and binding on this court, the same remaining of full force and unreversed.

3. Because the Orphans court aforesaid, have exclusive jurisdiction in matters relating to the probate of wills; and the proceeding and judgment of the said court aforesaid, being *in rem*, is binding and conclusive on all persons whatsoever, claiming any right or interest under the same.

The facts set forth in the preceding statement are agreed to be true, with liberty to either party to appeal in the same manner as if a special verdict had been rendered, and the judgment of the court given thereon.

If the opinion of the court shall be in favour of the petitioners, judgment shall be so entered; if otherwise, judgment shall be entered for defendant, and the petition dismissed, with liberty of appeal as aforesaid.

The county court (*Dorsey, Ch. J.* and *Kilgour* and *Wilkinson, A. J.*) gave judgment against the petitioners, whereupon they prosecuted the present appeal.

The cause was argued before BUCHANAN, Ch. J., and STEPHEN, ARCHER, and CHAMBERS, Judges.

R. J. BOWIE and R. JOHNSON, for the appellants.

This case comes before this court upon an agreement of facts, and the only question which seems to have been presented to the county court, and to be before this court is, whether it was competent to the petitioners to establish, by proof, in this cause the valid execution of a paper, purporting to be the last will and testament of *James Clagett*, the appellee's intestate, and former owner of the petitioners, by which the petitioners were manumitted, said paper having been before the Orphans court of *Montgomery* county, for probate, and on *caveat* by the next of kin of *Clagett*, that court having refused to admit it to probate, because of the mental incapacity of the supposed testator, and their judgment not having been appealed from, or set aside.

The counsel of the appellants will contend: That such judgment is not *conclusive* on the petitioners, and that it is competent for them, notwithstanding the same, to establish the will by proof, in the present case.

J. JOHNSON, for the appellee, contended:

1. That the petitioners could claim no right under the will, prior to its being admitted to probate in the Orphans court.

The act of 1798, *ch.* 101, *sub. ch.* 2, confers upon the Orphans courts, exclusive jurisdiction to try the validity of wills of personal estate.

By the 4th section, the probate is made conclusive, if the will is admitted to probate.

The 11th section makes the judgment of the Orphans court equally conclusive, if the decision is against the will. And the 13th section allows the Orphans court to re-hear the case after probate, either before or after the grant of letters, and makes the decision final, unless reversed on appeal to the Chancery or general court.

The act of 1818, *ch.* 204, sections 1 and 2, give an appeal to the court of Appeals, or by agreement to the county court.

Our Orphans courts have the same jurisdiction in reference to wills of personal estate, as the Ecclesiastical courts of *England*, and the validity of such wills can only be decided in those courts.

They only can pronounce such a will good or bad, to the utter exclusion of the courts of common law. 1 *Williams' Ex'rs*, 157, 158. *Allen vs. Dundas*, 3 *Term Rep.* 64. *Armstrong vs. Lear*, 12 *Wheat.* 175. In questions affecting personal estate, nothing but the probate or letters, with the will annexed, are evidence. *King vs. Inhabitants of Netherseal*, 4 *Term*, 150.

The attempt in this case was, to substitute the county court for the Orphans court, and if that course is allowable, the testacy, or intestacy of a party, will be made to depend upon the fluctuating opinions of every jury, which may be called upon to decide the question; as it is impossible to say, that the verdict of one jury would be binding upon another, in a case involving other questions, and between other parties.

The question of the validity or invalidity of the same will would be perpetually recurring, and conflicting decisions constantly made.

This jury might have found the will good, and the Orphans court bad, or *vice versa*.

2. If however, independently of any decision by the Orphans court upon the subject, it would have been competent to the petitioners, to prove it in the county court, the judgment of the former court having been pronounced against the will is final and conclusive.

The 11th and 13th sections of the *second sub. ch.* of the act of 1798, *ch.* 101, make the decision of the Orphans court conclusive if against the will, unless reversed on appeal. And the 4th section declares, that the will shall not be contested after probate.

It is clear, that if the Orphans court, upon the *caveat*, had

decided in favour of the will, it would not have been in the power of the defendant to have contested it upon this petition, and the same conclusive effect must result from a decision against the will.

The attempt is, to confer upon the county court appellate jurisdiction over decisions of the Orphans court, incidentally and collaterally, notwithstanding the act of 1818, *ch.* 204, declares in terms, that a *direct* appeal can only be taken to that court by the written agreement of the parties. And the appeal so to be taken, the same act says, shall be taken within thirty days from the date of the order or decree appealed from, which provision, it is obvious, if the present proceeding prevails, will be wholly nugatory, as the question involved in such order or decree, will be constantly coming up, without limit as to time.

Again—the county courts, even when the parties agree to take the appeal to them, are only authorized to review the decisions of the Orphans courts when they have before them a transcript of their proceedings. *Sub. ch.* 2, *sec.* 11.

But here there is no such transcript, and consequently the county court is asked to do indirectly, what it could not do directly. It is asked to review the judgment of the Orphans court incidentally, without regard, either to the time and mode of prosecuting a direct appeal from its decision.

The authorities are conclusive upon the binding effect of the judgment of a court of competent jurisdiction, when coming up incidentally in another court. *Barney vs. Patterson*, 6 *Har. and John.* 201. *Gelsten vs. Hoyt*, 4 *Peters' Cond. Rep.* 261. This however is not only the judgment of a court of competent, but of *exclusive jurisdiction.* 1 *Williams' Ex'rs*, 158. In an action by an executor, the probate is conclusive of his right to the estate. *Raborg vs. Hammond*, 2 *Har. and Gill*, 49. Proof of forgery, even in the temporal courts, will not be received to impeach the probate of a will. *Allen vs. Dundas*, 3 *Term Rep.* 60. It is true, the authority of the executor, is derived from the will, but the *evidence* of that authority, is to be found in the probate

alone, in cases respecting the personalty. 1 *Williams' Ex'rs*, 159. *Armstrong vs. Lear*, 12 *Wheat. Rep.* 169. *Tucker vs. Philips*, 3 *Atk.* 360. The nature and object of the present proceeding, cannot affect the rules of evidence, as questions affecting freedom are governed by the same rules, as those which relate to the assertion of other rights. *Mina vs. Hepburn*, 7 *Cranch*, 290. 5 *Munford*, 552.

3. There are other inseparable objections to the right of the petitioners to their freedom.

They are not manumitted by the will, but the executor is directed to set them free, and he has no power to execute the will without probate, that being the only *proof* of the will, in regard to the personal estate. *Allen vs. Dundas*, 3 *Term*, 65. *King vs. Netherseal*, 4 *Ib.* 150. 1 *Williams' Ex'rs*, 159. The executor, to be sure, derives his authority from the will, but the question is, *is there a will*, and that can only be settled by the probate.

Having to deduce their title from the executor, they must shew him to be such, by producing the probate. 1 *Williams' Ex'rs*, 161.

But suppose this objection obviated, and the executor could be shewn competent to manumit without probate, there is no evidence *that he has exerted* the power, and therefore the petitioners must fail.

By the court, ARCHER, Judge, dissenting.

JUDGMENT AFFIRMED.